UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) ) | |
| v. | ) ) | Criminal Action No. 12-10052-RGS |
| ISKENDER KAPLLANI | ) ) ) | |
| Defendant. | ) ) | |

REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS

January 16, 2014

SOROKIN, C.M.J.

Defendant Iskender Kapllani filed a motion to dismiss the Indictment, alleging a violation of his constitutional right to a speedy trial. Doc. No. 128. The government opposed the motion, Doc. No. 154, and the Court referred the motion to the undersigned for a Report and Recommendation. Doc. No. 186. I recommend that the Court DENY the motion without an evidentiary hearing.

I.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant has submitted local police reports and redacted FBI reports of interviews with cooperating witnesses in support of his motion. The government has submitted an affidavit from an FBI agent and the docket from Kapllani's prosecution in Florida. The following factual summary is drawn from these documents.

On March 1, 2010, Kapllani and Bryant Mendoza arranged to purchase three kilograms

1

of cocaine from a person they believed to be a cocaine supplier but who was, in fact, an undercover police officer ("UC").[1] Doc. No. 128-1 at 5. Kapllani and Mendoza appeared in Homestead, Florida to meet with the putative supplier, UC. Id. at 6. After inspecting the cocaine, providing a large amount of cash to UC, and directing the placement of the cocaine into the trunk of their car, Kapllani and Mendoza were arrested by Homestead police officers. Id. at 6-7.

After the arrest, Florida prosecuted Kapllani. Doc. No. 154-3. He posted bail on approximately March 19, 2010. Id. at 5. On numerous occasions, the trial in his case was continued at his request. See, e.g., id. at 3, lines 88, 106. Once it was continued at the request of prosecutors, id. at 2, line 137, and once, it appears, by the court, id. at 2, line 122. The docket does not reflect Kapllani's objection in either instance.

In the course of discovery in the Florida case, Kapllani exercised his right under Florida law to depose witnesses. Doc. No. 128-3 at 1. He sought to depose six Homestead officers, but, notably, he did not seek the deposition of any federal agent.[2] Id. Ultimately, on February 1-3, 2011, Kapllani deposed four of the Florida officers. Id. Whether he deposed the other two officers is not known. Id.

On February 21, 2012, Florida state prosecutors dismissed the Florida case. Doc. No. 154-3 at 1. More than three months later, on June 7th, a federal grand jury returned a

---

[1] According to Kapllani's submission of a Homestead police report, Mendoza contacted a Homestead Police informant regarding the purchase of three kilograms of cocaine on behalf of his friend Kapllani. Doc. No. 128-1 at 5.

[2] Nothing in the record suggests any of these agents possessed a federal cross-designation.

superseding indictment charging Kapllani with conspiracy to distribute five kilograms or more of cocaine, which encompassed the events of March 1, 2010 in Florida.  Doc. No. 15.  Kapllani was arrested in Boston on June 11, 2012, as a result of the federal indictment.  Between the time of the state dismissal and federal indictment, Kapllani faced no criminal charges arising out of the events of March 1, 2010.

Nothing submitted by Kapllani, other than assertions lacking in factual support or even citation, indicates or even suggests any federal law enforcement involvement in any way in Kapllani's arrest in Florida in March of 2010.  Moreover, the FBI agent's affidavit asserts, without contradiction, that the federal investigation commenced in August, 2010, months <u>after</u> the Florida arrest. Doc. No. 154-2 at 3, ¶ 4.

Nothing submitted by Kapllani, other than unsupported assertions, indicates or even suggests any federal role in his state prosecution.  The government's submission does reveal that in the course of the ongoing federal investigation, federal investigators "periodically updated the Homestead Police Department on the progress of" their investigation.  <u>Id.</u> at 5, ¶ 13. The government also reports that sometime in the fall or early winter of 2011, state and federal prosecutors agreed that the evidence seized in Florida would be incorporated into the federal case.  <u>Id.</u>

II.   <u>DISCUSSION</u>

Kapllani asserts a violation of his rights under the Speedy Trial Clause of the Sixth Amendment to the United States Constitution.  Specifically, he claims that too long has elapsed without a trial on the federal indictment in light of the time that has passed since his arrest on March 1, 2010 in Florida.  The United States opposes, contending that the speedy trial clock did

not commence until his first appearance in federal court on the federal indictment.

Ordinarily, "an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign." United States v. Dowdell, 595 F.3d 50, 61 (1st Cir. 2010) (quoting United States v. MacDonald, 456 U.S. 1, 10 n.11 (1982)). Thus, "[t]he speed of a federal trial is measured from the federal accusation on which it is based; one sovereign's enforcement of its own criminal laws is not attributable to another sovereign merely because of the presence of investigatory assistance, prosecutorial collaboration, or overlap among charges." Id. at 62.

An exception to this application of the dual sovereignty doctrine has arisen from the Supreme Court's decision in Bartkus v. Illinois, 359 U.S. 121, 123-24 (1959). An arrest or indictment at the state level may start the federal speedy trial clock, but only in those "situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." United States v. Guzman, 85 F.3d 823, 827 (1st Cir. 1996). As that explanation suggests, however, the First Circuit regards the Bartkus exception as a "narrow" one. Id.

Kapllani's speedy trial claim in this Court is premised on his 2010 Florida arrest falling within the Bartkus exception. Defendants seeking to avail themselves of the Bartkus exception bear the initial burden of "proffer[ing] evidence sufficient to establish a prima facie case that the two prosecutions were for the same offense." Guzman, 85 F.3d at 827. Kapllani has failed to meet that burden. The materials submitted with the instant motion clearly support the government's position that the Florida investigation and prosecution commenced on its own and without federal involvement.

While FBI agents and federal prosecutors later became aware of the Florida arrest, and federal and state prosecutors agreed to incorporate the evidence from the state case into the federal case, there is nothing to indicate the level of control required to implicate <u>Bartkus</u>. <u>See Guzman</u>, 85 F.3d at 827. Indeed, most of the police officer witnesses appeared for depositions in Florida in the first days of February 2011, enabling the state case to proceed well before the return of the federal indictment and providing to Kapllani a form of valuable discovery unavailable in federal court. Doc. No. 128-3 at 1. Moreover, Florida dismissed the prosecution in February of 2012, Doc. No. 154-3 at 1, leaving Kapllani free of all charges until June of that year, when the federal indictment was returned, Doc. No. 15. There is simply no evidence to support a finding that the United States controlled the state investigation[3] and no basis for an evidentiary hearing.[4]

Even if Kapllani could make the requisite showing to avail himself of the <u>Bartkus</u> exception, his speedy trial claim would fail. The determination of a speedy trial violation is governed by the four-part test set out in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972). The <u>Barker</u> test looks to the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." <u>Barker</u>, 407 U.S. at 530. Here, the state court docket reflects that Kapllani sought numerous continuances which contributed to the delay, Doc. No. 154-3 at 3-4,

---

[3]While there is some suggestion by Kapllani that the confidential informant who led to the Florida arrest may have been under the supervision or control of federal agents, both the local police reports and the FBI interview reports fail to provide any support for that claim. <u>See</u> Doc. No. 128-1 at 5; Doc. No. 128-2 at 9.

[4]Because Kapllani has failed to "make a sufficient threshold showing" that material facts are in dispute, an evidentiary hearing is unnecessary. <u>See</u> <u>United States v. Vilches-Navarrete</u>, 523 F.3d 1, 15 (1st Cir. 2008) (quoting <u>United States v. Panitz</u>, 907 F.2d 1267, 1273 (1st Cir. 1990)).

and that he failed assert his speedy trial right by objecting to the continuances sought by the court and the prosecution. Id. at 2.

III.     CONCLUSION

Accordingly, I recommend that the Court DENY Kapllani's motion without an evidentiary hearing.[5]

/s/ Leo T. Sorokin
LEO T. SOROKIN
United States Magistrate Judge

---

[5] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Crim. P. 59; 28 U.S.C. § 636(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 59(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).