UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 12-10052-RGS |
| | ) | |
| 2.   ISKENDER KAPLLANI and | ) | |
| 7.   TONY BEDINI, | ) | |
| Defendants | ) | |

### SENTENCING MEMORANDUM OF THE UNITED STATES

On May 28, 2015, a United States District Court jury found Iskender Kapllani and Tony Bedini (hereinafter "Kapllani," "Bedini," or "the defendants") guilty of conspiracy to distribute cocaine. The Pre-sentence Report prepared by the United States Probation Office, dated October 9, 2015, calculated Kapllani's total offense level ("TOL") as 36, his criminal history category ("CHC") as I, and his guideline sentencing range ("GSR") at 188-235 months in prison. Kapllani PSR, ¶¶ 69, 74, 115. Kapllani is also subject to a mandatory minimum sentence of 10 years in prison. On the same day, the United States Probation Office calculated Bedini's TOL as 32, his CHC as III, and his GSR at 151-188 months in prison. Bedini PSR, ¶¶ 62, 81, 119.

For reasons to be discussed in more detail at the defendants' sentencing hearings on November 13, 2015, the government requests that the Court sentence the defendants to the low end of their applicable guideline ranges, i.e., 188

months for Kapllani, 151 months for Bedini. These sentences are sufficient, but not greater than necessary, to achieve all of the goals of sentencing. See 18 U.S.C. §3553(a).

Based on the testimony of several key co-conspirators, phone records, travel records, extensive surveillance by the FBI, consensually-recorded conversations, and a 60 day wiretap on Kapllani's cell phone, the Court fully understands that the defendants were key players in a multi-kilogram cocaine distribution ring. Bedini and his partner, Armand Mara, conservatively shipped over 40 kilograms of cocaine to a group headed by Kapllani in Boston. Kapllani and his crew then sold the cocaine out of Kapllani's restaurant, the Arbri Café. In terms of the seriousness of the offense, the only significant difference between Kapllani and Bedini is the degree to which Kapllani organized and managed others – including but not limited to Bryant Mendoza, Elton Ceku, Igli Leka, Arben Teta, Maxim Zylyftari, and Geront Neziri – to help him distribute large quantities of cocaine in Boston.

Because Kapllani's prior federal criminal conviction for sale or possession of stolen motor vehicle parts occurred in 1997, Probation correctly determined that Kapllani's had no scorable criminal convictions. Still, it is worth noting that Kapllani's offense was not exactly a run-of-the-mill street crime – it involved a multi-state effort to steal high-end

automobiles, alter their VIN numbers, and re-sell them. Kapllani PSR, ¶72. Bedini's crimes were less sophisticated but more violent – as is set out in detail in his PSR, his offenses involved several occasions where he beat up and lashed out at strangers. See Bedini PSR, ¶¶75, 76, 77. More troubling, Bedini sold kilograms worth of cocaine while on probation for two of his assault convictions. Id., ¶80.

The Court's sentence must reflect the seriousness of the offense (this was a multi-kilogram cocaine conspiracy sustained over years); the need to promote general deterrence (Kapllani and Bedini were key players in the conspiracy); the need to specifically deter the defendants (Kapllani was arrested in the three-kilogram "reverse" in Florida, came back to Massachusetts, and accelerated his cocaine trafficking activities, Bedini sold kilograms worth of cocaine while on probation for two assault convictions); and the need to protect the public. A sentence of 188 months for Kapllani and 151 months for Bedini is sufficient, but not greater than necessary, to achieve these goals.

This leaves only Bedini's argument, expressed in his objections to the PSR, that the jury's verdict on drug weight binds this Court's sentencing calculations. Simply put, the Court does not demonstrate a lack of respect for the jury's verdict when it appropriately determines the applicability of various sentencing factors. Federal law permits a sentencing

3

court to broadly consider a defendant's conduct and background
when sentencing him. See 18 U.S.C. §3661 ("[n]o limitation shall
be placed on the information concerning the background,
character, and conduct of a person convicted of an offense which
a court of the United States may receive and consider for the
purpose of imposing an appropriate sentence"). Section
1B1.3(a)(1) of the United States Sentencing Guidelines directs
the Court, in calculating a guideline range, to consider "all
acts and omissions committed, aided, abetted, counseled,
commanded, induced, procured, or willfully caused by the
defendant . . . that occurred during the commission of the
offense of conviction, in preparation for that offense, or in
the course of attempting to avoid detection or responsibility
for that offense." Under §1B1.3(a)(2), the Guidelines require
that the Court determine the base offense level by considering
"all acts and omissions . . . that were part of the same course
of conduct or common scheme or plan as the offense of
conviction." USSG §1B1.3(a)(2).

Section 1B1.3 also instructs a sentencing court to consider
all "relevant conduct" in determining the applicable Guideline
range. A sentencing court may consider uncharged conduct, United
States v. Polk, 508 F.Supp.2d 89, 98–99 (D.Me.2007), aff'd, 546
F.3d 74 (1st Cir.2008); charged but not yet convicted conduct,
United States v. Anonymous Defendant, 629 F.3d 68, 76–77 (1st

4

Cir.2010); conduct underlying dismissed counts, United States v. Graciani, 61 F.3d 70, 74 (1st Cir.1995); and acquitted conduct. United States v. Paneto, 661 F.3d 709, 715 (1st Cir.2011). A Court may likewise consider evidence a defendant successfully suppressed, United States v. Acosta, 303 F.3d 78, 86 (1st Cir.2002); and evidence inadmissible at trial. United States v. Phaneuf, 91 F.3d 255, 261-62 (1st Cir.1996).

Alleyne v. United States, 133 S.Ct. 2151 (2013) is not to the contrary. In Alleyne, the Supreme Court found that any fact that triggers a mandatory minimum sentence must be submitted to and found beyond a reasonable doubt by a jury. Id. at 2162-63. However, the Supreme Court went to great lengths to point out that there remains a place for "judicial factfinding" at sentencing, even in the post-Alleyne world. Id. at 2163. The Court noted:

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.

Id., citing Dillon v. United States, 560 U.S. 817, 828-29 (2010) ("Within established limits[,] . . . the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted

5

and internal quotation marks omitted)); Apprendi v. United States, 530 U.S. 466, 481 (2000) ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender – in imposing a judgment *within the range* prescribed by statute") (emphasis in original); United States v. Tucker, 404 U.S. 443, 446 (1972) (judges may exercise sentencing discretion through "an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come"); Williams v. New York, 337 U.S. 241, 246 (1949) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law").

It remains within the sentencing court's discretion to judicially find facts informing the sentence actually imposed, provided that any such fact does not trigger a mandatory minimum punishment or alter a statutory maximum, and that the ultimate sentence remains within the range of penalties set forth in the statute of conviction. United States v. Doe, 741 F.3d 217, 234 (1st Cir. 2013). In such a situation, Alleyne does not apply, and the sentencing court may continue to find facts based upon a

preponderance of the evidence. Id. Accord United States v. George, 761 F.3d 42, 60 (1st Cir. 2014) (enhancement did not increase statutory maximum or minimum sentence so preponderance, not beyond a reasonable doubt, appropriate standard). The evidence at trial and set forth with particularity in the PSR amply demonstrates by a preponderance of the evidence that Bedini and Mara sent over 40 kilograms of cocaine to the Kapllani group in Boston.

Based on Bedini's self-serving testimony at trial – which was, in a word, preposterous – the government would have been within its rights to seek an enhancement for obstruction of justice. See U.S.S.G. §3C1.1. See generally United States v. McKeeve, 131 F.3d 1, 15 (1st Cir.1997) ("Before imposing an obstruction of justice enhancement predicated on perjurious testimony, a sentencing court must survey the trial evidence to ascertain whether it establishes that the defendant 'gave false testimony concerning a material matter with the willful intent to provide false testimony rather than as a result of confusion, mistake, or faulty memory'), citing United States v. Dunnigan, 507 U.S. 87, 94 (1993). In the government's view, the sentencing range calculated by United States Probation accurately captures what Bedini did and who he is. It sets forth a sentence which is sufficient but not greater than necessary to achieve the goals of sentencing.

7

Wherefore, the government requests that the Court sentence Kapllani to 188 months in prison and Bedini to 151 months in prison.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: /s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 11, 2015.

/s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney