UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2023 NOV -3 AM 11: 37

ISKENDER KAPLLANI,
    Petitioner/Movant,

v.

UNITED STATES OF AMERICA,
    Respondent.

Case No: 1: 12 CR 10052 - O

Motion For Reduction
Of Sentence Under
18 U.S.C. Section 3582(c)(2)

Comes now, the Movant, Iskender Kapllani, ("Mr. Kapllani"), acting in a pro se capacity, and respectfully moves the Court for a reduction of sentence under 18 U.S.C. Section 3582(c)(2), based on the following:

I. FACTUAL AND PROCEDURAL HISTORY OF AMENDMENT 821

The Sentencing Commission sent Congress amendments to the Federal Sentencing Guidelines ("the guidelines") on April 29, 2023, including several changes to the way criminal history is calculated in chapter 4 of the Guidelines. Accumulating criminal history points can increase one's guideline range and affect the ultimate sentence. Two changes lower criminal scores starting on November 1, 2023. The Commission voted on August 24, 2023 to make those changes retroactive. The changes permitted to inmates is to seek sentence reductions which average 14 months or more. The Commission voted to amend the Criminal History Guideline to eliminate the two-point addition of those serving any form of a criminal justice sentence. Zero point offenders "Zero-point offenders" is the term given to defendants who have no criminal

1

history points. According to the Commission's data, people with no criminal history points are at much lower risk of recidivating when compared with people who have only one criminal history point. Yet, defendant's with no criminal history are treated in the same way as those with one criminal history point for the purposes of calculating their guideline range. With this difference in mind, the amended Criminal History guideline now provides a two-level decrease for some defendant's with zero points. Judges will be able to reduce the sentencing range by two levels if the defendant meets a list of criteria. They are: the defendant did not (1) receive any criminal history points; (2) receiver a terrorism adjustment; (3) use violence of credible threats of violence in connection with the offense; (4) possess, receive, or otherwise handle a firearm or other dangerous weapon; (5) personally cause financial hardship; (6) receive a hate crime, vulnerable victim, or serious human right offense adjsutment; (7) receive an aggravating role adjustment; or (8) engage in a continuing criminal enterprise.

In addition, the instant offense cannot have resulted in death or serious bodily injury; was not a sex offense; and not an offense involving individual rights. For people who receive a two-level reduction and whose offense level is not higher than 11, the amendment counsels courts to consider a sentence other than imprisonment. If the individual receives the two-level reduction but has an offense level higher that 11 and that offense level in the court's judgment, overstates the gravity of the offense, the court might also consider a departure to sentence other than imprisonment.

The Commission has found that status points and first offender status are disproppportionately assessed on people of color. Demographic data on incarcerated people who would be eligible for status point retroactively reveal

2

that 43 percent are Black and almost 28 percent are Hispanic. Similarly, demographic data demonstrates that people of color make up 83.1 percent of individuals eligible for the zero-point adjustment; nearly 70 percent are Hispanic.

## II. JUSRIDICTIONAL BASIS FOR MOTION

The jurisdictional basis for this Motion is 18 U.S.C. Section 3582(c) and U.S.S.G 1B1.10. There are two components. The first is the Movant has to prove that he is not ineligible as set forth above. Second, the court has discretion whether to reduce the Movant's sentence.

## III. LEGAL ANALYSIS

The zero-point offender amendment (Part B) requires Mr. Kapllani to meet the 10 criteria listed in the new U.S.S.G 4C1.1:

1. No criminal history points. Mr. Kapllani has no criminal history points.

2. No adjustment under 3A1.4 (terrorism). Mr. Kapllani does not have an adjustment under 3A1.4.

3. No use of credible threats of violence in connection with the offense. Mr. Kapllani did not use credible threats of violence in connection with an offebse.

4. The offense did not result in the death or serious bodily injury. Mr. Kapllani does not have an offense that resulted in death or serious bodily injury.

5. The offense is not a sex offense. Mr. Kapllani does not have a sex offense.

6. The defendant did not personally cause substantial financial injury hardship. Mr. Kapllani did not personally cause substantial financial injury

7. The defendant did not posses, receive, purchase, transport, transfer, sell, or dispense a firearm or other dangerous weapon in connection with the offense. Mr. Kapllani did not possess, receive, purchase, transport, transfer, sell or dispense of a forearm or other dangerous weapon in connection with a offense.

8. The instant offense is not covered under 2H1.1 (offense involving individual rights). Mr. Kapllani does not have an instant offense covered under 2H1.1.

9. The defendant did not receive an adjustment under 3A1.1 (hate crime motivation or vulnerable victim) or 3A1.5 (serious human rights offense). Mr. Kapllani did not receive an adjustment under 3A1.1 or 3A1.5.

10. The defendant did not receive an adjustment for an aggravating role (3B1.1) and was not engaged in a continuing criminal enterprise under 484. Mr. Kapllani did not receive an adjustment for a role (3B1.1) and was not engaged in a continuing criminal enterprise under 21 U.S.C. Section 484.

## IV. SECTION 3582(c)(2)

In the case of the defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(c), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in Section 3553(a) to the extent that they are applicable, if such a reduction is consistent with the applicable policy statements issued by the

Sentencing Commission.

There are three requirements. First, Mr. Kapllani has to be eligible for a reduction, meaning the application of the amendment has the effect of lowering his Guidleine.

Second, relief is discretionary. The court may deny a reduction if it finds one unwarranted. The same applied when the Amendment 782 came out in 2014, and with compassionate release motions. These are discretionary.

Third, the district court's decision is based primarily off the sentencing factors under 10 U.S.C. 3553(a). These are the same factors the court considered at the original sentencing hearing. However, the key here is the Supreme Court's decision in Pepper which held that post-sentencing rehabilitation efforts can have a major impact on the 3553(a) factors.

## V. EXHAUSTION

~~Mr. Kapllani sent the warden an email requesting the two-level reduction. (Exhibits A). Thirty days have expired with no favorable decision from the warden. Therefore, Mr. Kapllani has exhausted his administrative remedies.~~

Exhaustion Not required per Amendment

## VI. 18 U.S.C. SECTION 3553(A) FACTORS

The factors set forth in 18 U.S.C. Section 3553(a) which include "the nature and circumstances of the offense, the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." Id. Section 3553(a)(1), (a)(2)(c) - - Counsel in favor of a reduction in sentence. Mr. Kapllani acknowledges his offense conduct was serious; but, his time in prison has been exemplary. Mr. Kapllani has made extraordinary efforts to rehabilitate himself while in prison participating in

5

numerous classes sufficient to meet First Step Act requirements. Moreover, as of August 16, 2023, Mr. Kapllani has served 71.77% of his full term and 83.4% of his statutory term. (See Exhibit B). Mr. Kapllani is currently seeking asylum in the United States.

## VII. ADDITIONAL ASPECT OF AMENDMENT 821

An additional aspect of the new Sentencing Guidelines is the authority it gives district courts to unusally long sentences. The new amendment, according to the USSC, "agrees with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopts a tailored approach that narrowly limits that principle in multiple ways. First, it permits the consideration of such changes in cases involving "unusually long sentences," which the legislative history of the SRA expressively identified as a context in which sentence reduction authority is needed. See Rep. No. 98 225, at 55 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3238 39. ("The committee believes that there may be unusual cases in which the eventual reduction in the length of a term of imprisonment is justified by changed circumstances. This would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender [sic] was convicted have been later amended to prove a shorter term of imprisonment."). Second, the change of law itself may be considered an extraordinary and compelling reason only where it would produce a gross disparity between the length of the sentence being served and the sentence likely to be imposed at the time the motion it filed. Finally, to address

administrative concerns raised by some commenters, the ammendment limits the application of this provision to individuals who have served at least 10 years of the sentence the motion seeks to reduce. Commission data show that between fiscal year 2013 and fiscal year 2022, fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer.

This motion can be brought regardless of the offense of conviction, and whether or not the defendant received a mandatory minimum. The USSC thus effectively throws into doubt the whole Mandatory Minimum construct, as it gives district court judges almost unlimited power to render new, (lower) sentences.

The literary luminary Ernest Hemingway said that in order to write something good you must write the truth. In Mr. Kapllani's case the truth is he made some bad mistakes. He acknowledges these mistakes and has great remorse. His release plan comprises the first of his attempting to regain a modicum of dignity. Mr. Kapllani has the ability and the intent to become a valuable contributing member of his community upon release with his family's support.

## CONCLUSION

Wherefore, Mr. Kapllani respectfully asks the Court to grant him a two-level reduction.

This the 30 day of OCT, 2023.

Respectfully,

Iskender Kapllani
Reg. No. 50995-066
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640

7

## Declaration

I hereby certify the foregoing is true and correct to the best of my knowledge and belief pursuant to 28 USC Section 1746.

*[signature]*
Iskender Kaptani

CERTIFICATE OF SERVICE

ISKENDER KAPLLANI v. UNITED STATES OF AMERICA

Case No: 1: 12CR 10052 - O

Pursuant to Section 1746 of Title 28 of the United States Code, Petitioner/Movant Iskender Kapllani, appearing pro se declares under penalty of perjury as follows: I am an inmate presently incarcerated at FCI Fort Dix, Joint Base/MDL, NJ 08640 ("FCI Dix"). On October 30, 2023, I have deposited an envelope in the internal mail system at FCI Fort Dix first-class postage prepaid by me containing the following documents: Motion for Reduction In Sentence Under 18 U.S.C. Section 3582(c)(2). The envelope deposited in the internal FCI Fort Dix mail system is addressed to the Clerk of Court, United States District Court For The District Of Massachusetts.

The Government will be notified by the Court's CM/ECF system as I have limited copier access at this time.

Respectfully,

Iskender Kapllani
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, NJ. 08640